# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-20544-CIV-SMITH

JAY LEWIS FARROW, FARROW LAW, P.A.,
DR. JANE DOE, and INFANT DOE,

      Plaintiffs,

vs.

IOA GROUP, LLC, INSURANCE OFFICE OF
AMERICA, INC., HEATH RITENOUR, JOHN
RITENOUR, FTI CONSULTING, INC.,
STEVEN H. GUNBY, TIMOTHY KOLAYA,
STUMPHAUZER, KOLAYA, NADLER &
SLOMAN, PLLC, BRIAN MORAN, MORAN,
KIDD, LYONS, JOHNSON, GARCIA, P.A.,
GUNSTER LAW, BENJAMIN WIEDER,
MCCLATCHY MEDIA COMPANY, DUANE
MORRIS, LLP, JOE TAYLOR
RESTORATION, INC., JOSEPH CLIFFORD
TAYLOR, WIESS, SEROTA, HELFMAN,
COLE & BIERMAN, P.L., BUCKNERMILES, P.A.,
ROIG, ROSENBERG, MARTIN & BELLIDO, P.A.,
TELAN, MELTZ, WALLACE & EIDE, P.A.,
AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA, BERKSHIRE
HATHAWAY SPECIALTY INSURANCE
COMPANY, CHUBB CUSTOM INSURANCE
COMPANY, HARTFORD CASUALTY
INSURANCE COMPANY, MARKEL
INSURANCE COMPANY, NATIONWIDE
INSURANCE COMPANY OF AMERICA,
PHILADELPHIA INDEMNITY INSURANCE
COMPANY, and SAFEPOINT INSURANCE
COMPANY,

      Defendants.

_____/

## DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
## INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*777 Partners LLC v. Pagnanelli*,
  2021 WL 2038175 (S.D. Fla. Mar. 8, 2021) ............................................................................ 23

*Advanced Fluid Systems, Inc. v. Huber*,
  28 F.Supp.3d 306 (M.D. Pa. 2014) ......................................................................................... 26

*Agilysys, Inc. v. Hall*,
  258 F. Supp. 3d 1331 (N.D. Ga. 2017) ................................................................................... 26

*Albra v. Moody*,
  2019 WL 13549179 (S.D. Fla. Nov. 19, 2019) ....................................................................... 14

*Almanza v. United Airlines, Inc.*,
  851 F.3d 1060 (11th Cir. 2017)............................................................................................... 20

*Al-Rayes v. Willingham*,
  914 F.3d 1302 (11th Cir. 2019)............................................................................................... 19

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010)............................................................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 9

*Berrocal v. AG*,
  136 F.4th 1043 (11th Cir. 2025)............................................................................................... 10

*Bochese v. Town of Ponce Inlet*,
  405 F.3d 964 (11th Cir. 2005)................................................................................................... 9

*Boyle v. United States*,
  556 U.S. 938 (2009) ............................................................................................................... 19

*Brennan v. Ruffner*,
  640 So. 2d 143 (Fla. 4th DCA 1994) ...................................................................................... 29

*Brown Jordan Int'l, Inc. v. Carmicle*,
  846 F.3d 1167 (11th Cir. 2017)............................................................................................... 24

*Calvoz v. Chamonix, Inc.*,
  2023 WL 11661631 (S.D. Fla. Apr. 20, 2023)........................................................................ 28

*Carter v. MGA, Inc.*,
  189 F. App'x 893 (11th Cir. 2006)........................................................................................... 22

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) ................................................................................................ 26

*Chaparro v. Carnival Corp.*,
  693 F.3d 1333 (11th Cir. 2012) ............................................................................. 27

*Cisneros v. Petland, Inc.*,
  972 F.3d 1204 (11th Cir. 2020) ............................................................. 15, 17, 19, 21

*Compare Coll Builders Supply, Inc. v. Velez*,
  2017 WL 4158661 (M.D. Fla. Aug. 31, 2017) ..................................................... 26

*Corbin v. Supreme Court of Fla.*,
  233 F. App'x 917 (11th Cir. 2007) ........................................................................ 30

*Corcel Corp. v. Ferguson Enters.*,
  551 F. App'x 571 (11th Cir. 2014) ........................................................................ 15

*Crawford's Auto Center, Inc. v. State Farm Mutual Auto. Ins. Co.*,
  945 F.3d 1150 (11th Cir. 2019) ............................................................................. 17

*Davis v. Coca-Cola Bottling Co. Consol*,
  516 F.3d 955 (11th Cir. 2008) ............................................................................... 12

*Dental Ass'n v. Cigna Corp.*,
  605 F. 3d 1283 (11th Cir. 2010) ............................................................................ 10

*Dixon v. Green Tree Servicing, LLC*,
  859 F. App'x 373 (11th Cir. 2021) ........................................................................ 20

*DJ Lincoln Enters. v. Google LLC*,
  2022 WL 203365 (11th Cir. Jan. 24, 2022) .......................................................... 15

*Donaldson v. Carnival Corp.*,
  2020 WL 6801883 (S.D. Fla. Nov. 18, 2020) ...................................................... 29

*Doria v. Class Action Servs., LLC*,
  2009 WL 10699955 (S.D. Fla. Mar. 4, 2009) ....................................................... 21

*Drummond v. Zimmerman*,
  454 F. Supp. 3d 1210 (S.D. Fla. 2020) ................................................................. 22

*Edwards v. Prime, Inc.*,
  602 F.3d 1276 (11th Cir. 2010) ............................................................................. 26

*Efron v. Candelario*,
  110 F.4th 1229 (11th Cir. 2024) ........................................................................... 30

ii

*Farrow Law, P.A. v. Wells Fargo, N.A.*,
    2024-019619-CA-01 (11th Jud. Cir., Miami-Dade County, Fla.)................................. 2

*Farrow v. FTI Consulting Inc.*,
    2024-013000-CA-01 (11th Jud. Cir., Miami-Dade Cty., Fla.).................................... 6

*Fed. Deposit Ins. Corp. for Orion Bank of Naples, Florida v.*
    *Nason Yeager Gerson White & Lioce, P.A.*,
    2013 WL 12200968 (M.D. Fla. July 22, 2013) ........................................................ 29

*Ferrell v. Durbin*,
    311 F. App'x 253 (11th Cir. 2009)......................................................................... 15

*Garcia v. Porsche Financial Services, Inc.*,
    No. 1:24-cv-21498-BB (S.D. Fla. July 15, 2024) ...................................................... 6

*GlobalOptions Servs. v. N. Am. Training Grp., Inc.*,
    131 F. Supp. 3d 1291 (M.D. Fla. 2015) .................................................................. 23

*Ins. Off. of Am., Inc. v. Spagnuolo*,
    No. 2020-CA-000725, D.E. 716 (Fla. 18th Jud. Cir. Ct. Apr. 10, 2023) .................... 4

*Inversiones YV3343 v. Lynx FBO Fort Lauderdale, LLC*,
    2024 WL 2938805, *6 (S.D. Fla. June. 11, 2024) ................................................... 28

*Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*,
    634 F.3d 1352 (11th Cir. 2011)................................................................... 15, 17, 20

*Jackson Hewitt, Inc. v. Kaman*,
    100 So. 3d 19 (Fla. 2d DCA 2011) ........................................................................ 28

*Jackson v. Bank of Am., N.A.*,
    898 F.3d 1348 (11th Cir. 2018)............................................................................. 14

*Jackson v. BellSouth Telecomms.*,
    372 F.3d 1259 (11th Cir. 2004)....................................................................... 21, 22

*Kelly v. United States*,
    140 S. Ct. 1565 (2020) ......................................................................................... 19

*Kivisto v. Miller, Canfield, Paddock and Stone, PLC*,
    413 F. App'x 136 (11th Cir. 2011)......................................................................... 22

*Kowkabany v. Home Depot, Inc.*,
    606 So. 2d 716 (Fla. 1st DCA 1992) ...................................................................... 28

*Lane v. Cold*,
    882 So. 2d 436 (Fla. 1st DCA 2004) ...................................................................... 29

*Lewis v. Governor of Ala.*,
  944 F.3d 1287 (11th Cir. 2019) ............................................................... 11

*Louis v. McIntosh Auto Grp.*,
  2022 WL 610645 (S.D. Fla. Feb. 11, 2022) ............................................... 13

*Lujan v. Def. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................. 9

*Magluta v. Samples*,
  256 F.3d 1282 (11th Cir. 2001) ............................................................... 12

*Maillard v. Dowdell*,
  528 So. 2d 512 (Fla. 3rd DCA 1988) ....................................................... 29

*Mays v. Joe Taylor Restoration, Inc.*,
  No. 2020-CA-006839, D.E. 53 (Fla. 15th Jud. Cir. Ct., April 1, 2021) .................... 5

*McAndrew v. Lockheed Martin Corp.*,
  206 F.3d 1031 (11th Cir. 2000) ............................................................... 22

*McDonough v. City of Homestead, Fla.*,
  2023 WL 3035215 (11th Cir. Apr. 21, 2023) ............................................ 13

*Mortg. Now, Inc. v. Stone*,
  2010 WL 11519201 (N.D. Fla. Sept. 29, 2010) ........................................ 25

*Nexans Wires S.A. v. Sark—USA, Inc.*,
  319 F. Supp. 2d 468 (S.D.N.Y. 2004) ...................................................... 24

*Omnipol, A.S. v. Multinational Def. Servs., Ltd. Liab. Co.*,
  32 F.4th 1298 (11th Cir. 2022) ........................................................ 19, 20

*Paerosol Global Partners LLC v. Steve Garlek.*,
  No. 20-009041-CA (Fla. 15th Jud. Cir. Ct., Palm Beach Cty., Nov. 15, 2021) .................... 16

*Podium Corp. v. Chekkit Geolocation Services, In*c.,
  2021 WL 5772269 (D. Utah Dec. 6, 2021) ............................................... 26

*Prof'l LED Lighting, Ltd. v. AAdyn Tech., LLC*,
  88 F. Supp. 3d 1356 (S.D. Fla. 2015)...................................................... 23

*Pupke v. McCabe*,
  2014 WL 12621479 (S.D. Fla. Jan. 30, 2014) .......................................... 26

*Qualman v. Quantify, Inc.*,
  No. 2022- 013768-CA-01 (Fla. 11th Jud. Cir. July 8, 2024) ....................... 6

iv

*Randall v. Scott*,
   610 F.3d 701 (11th Cir. 2010) ................................................................................... 9

*Regus Management v. Farrow Law*,
   2024-238200 (Fla. 15th Jud. Cir. Ct., Miami-Dade Cty, May 19, 2025) .................................. 17

*Resdev, LLC v. Lot Builders Ass 'n, Inc.*,
   2005 WL 1924743 (M.D. Fla. Aug. 10, 2005) .......................................................... 24

*Rickett v. Smith*,
   2015 WL 3580500 (W.D. Ky. June 5, 2015) ............................................................ 17

*Rodgers v. Addy*,
   2021 WL 4487903 (S.D. Fla. Sep. 27, 2021) ........................................................... 18

*Se. Laborers Health & Welfare Fund v. Bayer Corp.*,
   655 F. Supp. 2d 1270 (S.D. Fla. 2009) ................................................................. 19

*Simpson v. Sanderson Farms, Inc.*,
   744 F.3d 702 (11th Cir. 2014) ........................................................................ 15

*Sinaltrainal v. Coca-Cola Co.*,
   578 F. 3d 1252 (11th Cir. 2009) ..................................................................... 10

*Spagnuolo v. Am. Cas. Co. of Reading*,
   No. 24-60422-CIV-SMITH, 2024 WL 3537512 (S.D. Fla. July 1, 2024) ................................ 5

*Spagnuolo v. Ins. Office of Am., Inc.*,
   356 So. 3d 908 (Fla. 5th DCA. 2023) ...................................................... 3, 4, 14, 30

*Spagnuolo v. Insurance Office of America*,
   Case No. 59-2021-CA-002275 (Fla. 18th Jud. Cir. Ct, Sept. 17, 2024), at 1 .......................... 3

*St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*,
   347 F. Supp. 3d 1047 (M.D. Fla. 2018) ............................................................... 23

*The Knit With v. Knitting Fever, Inc.*,
   625 F. App'x 27, (3d Cir. 2015), *cert. denied*,
   136 S. Ct. 1662, 194 L. Ed. 2d 768 (2016) ............................................................ 15

*Tracfone Wireless, Inc. v. Simply Wireless, Inc.*,
   229 F.Supp.3d 1284 (S.D. Fla. 2017) .................................................................. 26

*Viridis Corp. v. TCA Glob. Credit Master Fund, LP*,
   155 F. Supp. 3d 1344 (S.D. Fla. 2015) ................................................................ 18

*Weiland v. Palm Beach Cty. Sheriff's Office*,
   792 F.3d 1313 (11th Cir. 2015) .................................................................... 12, 13

*XL Funding, Inc. v. Griggs*,
  2021 WL 1976028 (S.D. Fla. Apr. 26, 2021)............................................................................ 23

**Statutes**
18 U.S.C. § 1030(g) ........................................................................................................ 28, 29, 31

18 U.S.C. § 1343 ................................................................................................................... 21

18 U.S.C. §1961(1) ............................................................................................................... 20

**Rules**
Rule 12(b)(6)............................................................................................................................. 9

Defendants, American Casualty Company of Reading Pennsylvania; Berkshire Hathaway Specialty Insurance Company; Chubb Custom Insurance Company; Hartford Casualty Insurance Company; Markel Insurance Company; Nationwide Insurance Company of America; Philadelphia Indemnity Insurance Company; Moran Kidd Lyons Johnson Garcia, P.A.; Brian Moran; Joe Taylor Restoration, Inc.; Joseph Clifford Taylor; IOA Group, LLC; Insurance Office of America, Inc.; Heath Ritenour; John Ritenour; Stumphauzer Kolaya Nadler & Sloman, PLLC; McClatchy Media Company, LLC; Benjamin Wieder; Duane Morris LLP; Gunster Law; and Buckner and Miles, P.A. (collectively, the "Moving Defendants"), through their respective undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), move to dismiss the Complaint ("Complaint") filed by Plaintiffs Jay Lewis Farrow ("Farrow"), Farrow Law, P.A. ("Farrow Law"), Dr. Jane Doe ("Dr. Doe") and Infant Doe (collectively "Plaintiffs"). In support thereof, the Moving Defendants state:

## INTRODUCTION

Magistrate Judge Nicholas Mizell (M.D. Fla.) found that Plaintiff Jay Farrow has a "habit of making excuses based on his alleged victimhood of an elaborate cyber-hacking conspiracy." For the *fifth* time in front of this Court alone, Farrow argues that Insurance Office of America, Inc. ("IOA") orchestrated a sprawling cyber-conspiracy with the sole goal of victimizing either Farrow or his client, Louis Spagnuolo. Last year, this Court rejected two separate emergency motions filed by Farrow on the grounds that there was no "evidence that Defendants are behind the cyber-attacks." This Court dismissed the complaint in that action both on the merits and because Farrow failed to oppose the defendants' motion to dismiss. And in this action, Magistrate Judge Lauren Louis found that Plaintiffs had failed to adduce evidence that the cyber-conspiracy excused Plaintiffs' delay in effecting service. (D.E. 82). This Court is not alone in rejecting Farrow's fanciful allegations. Other courts have found Farrow's emergency motions and complaints to be

"incomprehensible," "garbled," and an "elaborate excuse for not honoring professional obligations and otherwise avoiding accountability."  The instant Complaint—which is Farrow's *ninth* attempt at pleading the same underlying RICO case—only compounds on the same deficiencies.  The Complaint should be dismissed with prejudice.

The crux of the Complaint is Farrow's accusation that 28 unaffiliated Defendants conspired to create a series of "perfect imitation[s]," including "fake" complaints by former clients, "fake" court notices, and "fake" websites.  The Complaint offers no plausible basis to infer any of the perfect imitations are, in fact, imitations at all.  Indeed, several courts have dismissed Farrow's cases for ignoring the "fake" court notices.  The Florida Bar has filed contempt proceedings against Farrow for ignoring the "fake" complaints from clients.  And Farrow himself was found liable for the "fake" websites he identifies here.  Even if Plaintiffs' conspiracy theory were plausible (it is not), Plaintiffs' claims fail for the same reason identified by this Court last year: the Complaint offers no plausible basis to infer that Defendants are involved in any conspiracy against Farrow.

For the reasons stated below, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

## I.    Farrow's Prior RICO Allegations Against Defendants

Since 2019, Farrow has filed at least eight complaints alleging that IOA was the hub of a criminal enterprise under either the federal or Florida Racketeering Influenced and Corrupt Organizations Act ("RICO").[1]  None have made it past the pleading stage.

---

[1]    This number excludes at least 10 cases Farrow filed and abandoned without serving any defendant.  *See, e.g.*, *Farrow Law, P.A. v. Wells Fargo, N.A.*, 2024-019619-CA-01 (11th Jud. Cir., Miami-Dade County, Fla.).

### A.     IOA Defamation and RICO Actions

This case begins with Farrow's failed attempt to extort a settlement from IOA and its executives, Defendants John and Heath Ritenour (together with IOA, the "IOA Defendants").  In 2019, Farrow threatened to make a "public spectacle" of the IOA Defendants unless they settled with his client, a disgruntled referral source who assisted IOA in generating a single account.  *See Spagnuolo v. Ins. Office of Am., Inc.*, 356 So. 3d 908, 913-915 (Fla. 5th DCA 2023).When the IOA Defendants refused to settle, Farrow orchestrated a "systematic" and "ongoing" cyber-harassment campaign.  *Id.* at 915.  As recognized on appeal, this campaign included (i) issuing "misleading" "press releases" accusing the IOA Defendants of "RICO violations," "nefarious actions," and other "gangster-like behavior"; (ii) creating fictitious websites; and (iii) using fake email accounts to forward these accusations to IOA's clients and The Florida Bar.  *Id.* at 913.

IOA RICO Action: Alongside the cyber-harassment campaign, Farrow filed the initial RICO complaint against the IOA Defendants (the "IOA RICO Action").[2]  Judge Dalton (M.D. Fla) dismissed the complaint as a shotgun pleading because, among other reasons, the "rambling narrative" failed to plead "each Defendant's role in the [RICO] schemes."  *See* Ex. 1 (IOA RICO Dismissal Order, *Spagnuolo v. Ins. Office of Am.*, 6:23-cv-006746 (M.D. Fla., Nov. 1, 2023)) at 1, 4-5.  The amended complaint dropped the federal RICO claims and stripped the federal court of jurisdiction.  *See Spagnuolo v. Insurance Office of America*, Case No. 59-2021-CA-002275 (Fla. 18th Jud. Cir. Ct, Sept. 17, 2024), at 1.  Following the federal court's *sua sponte* remand based on its discretion to decline to exercise supplemental jurisdiction on the remaining state court claims, Farrow seemingly abandoned the case, failing to oppose a motion to dismiss or appear for two hearings.  *Id.*  The trial court dismissed the case with prejudice, including because the Florida

---

[2]     The IOA Action was initially filed in Broward County, transferred to Seminole County, and then removed to the Middle District of Florida.

RICO claims were premised on the same deficient factual allegations that led to dismissal of the federal RICO claims.  *Id.* at 7.

IOA Defamation Action:  In March 2020, the IOA Defendants filed a defamation action against Farrow and his law firm, as well as Farrow's client, Spagnuolo (the "IOA Defamation Action").  *See Ins. Off. of Am., Inc. v. Spagnuolo*, No. 2020-CA-000725, D.E. 716 (Fla. 18th Jud. Cir. Ct. Apr. 10, 2023).   On April 26, 2021, after a three-day hearing, the trial court judge temporarily enjoined Farrow from his "ongoing and systematic campaign" against IOA. *Spagnuolo v. IOA*, 356 So. 3d at 912  As relevant here, Farrow was enjoined from "contacting clients" of IOA, including some of the Carrier Defendants in this action, about the alleged IOA RICO criminal enterprise.  *Id.*  Although narrowed on First Amendment grounds, the injunction was upheld on appeal, and the appellate court found that the IOA Defendants had "established" that Farrow "intentionally and without justification" interfered with IOA's business relationships. *Id.* at 915.

On December 26, 2024, the trial court found that "the actions of Farrow" "shock the conscience of the Court" and were "one of the most egregious cases of defamation" to ever "come before the Court." Ex. 2 (*IOA v. Spagnuolo*, No. 2020-CA-000725 (Fla. 18th Jud. Cir. Ct. Dec. 26, 2024) at 689.The court awarded IOA over $15 million dollars in punitive damages, holding Farrow and Spagnuolo jointly and severally liable.  *Id.*  Farrow did not appear at trial or appeal the court's final judgment.

### B.    Joe Taylor RICO Action

In 2019, Farrow filed an unrelated RICO action against the Joe Taylor Defendants.  The RICO action was dismissed.  *Mays v. Joe Taylor Restoration, Inc.*, No. 2020-CA-006839, D.E. 53 (Fla. 15th Jud. Cir. Ct., April 1, 2021) ("[P]laintiffs are ill motivated, intending to damage the reputations not only of the defendants, but of associated officers and employees.").   After

dismissing the case, the trial court awarded defendants attorneys' fees because the RICO action "was without substantial fact or legal support as to all the Defendants." (D.E. 107). Dismissal was affirmed on appeal. No. 4D21-1776 (Fla. 4th DCA, June 20, 2022).

### C.    Carrier RICO Action

In March 2024—after Farrow had been enjoined from contacting IOA's client insurance companies about the IOA RICO allegations—Farrow filed suit against those insurers in this Court, alleging that those insurers were part of the IOA RICO conspiracy. *Spagnuolo v. Am. Cas. Co. of Reading*, No. 24-60422-CIV-SMITH, 2024 WL 3537512 (S.D. Fla. July 1, 2024) (the "Carrier RICO Action"). In May 2024, Farrow filed an amended complaint, which alleged that the purported "IOA enterprise" centered around a cyber-warfare campaign deployed by FTI Consulting Inc. ("FTI").

In July 2024, Farrow filed two emergency motions, in which he alleged to be the victim of that same vast cyber-conspiracy. He speculated that FTI and the IOA Defendants were "behind the cyber-attacks" due to the "timing of the cyber-attacks" and because they had "the means, resources, and capabilities needed to execute the cyber-attacks." 2024 WL 3537512, at *2 (S.D. Fla. July 1, 2024). On July 1, 2024, this Court denied the emergency motions because, among other reasons, Farrow offered "no evidence connecting Defendants to the attacks" or criminal schemes identified in the motions. *Id.* at *11 ("[T]here is simply no record evidence that Defendants are behind the cyber-attacks.").

After the defendants moved to dismiss on July 30, 2024 (D.E. 99), Farrow failed to oppose. On December 11, 2024, this Court dismissed the action with prejudice, including because the complaint failed to state a claim. Ex. 3 ((D.E. 108) ("Carrier RICO Dismissal Order")).

### D.      FTI RICO Action

After this Court denied his emergency motions, Farrow filed a new action against FTI to seek the same emergency relief from another court. *Farrow v. FTI Consulting Inc*., 2024-013000-CA-01 (11th Jud. Cir., Miami-Dade Cty., Fla.) (the "FTI RICO Action"). The trial court found Farrow's emergency motion "incomprehensible." (D.E.11). In September 2024, Farrow amended the complaint to assert claims against the Carrier and IOA Defendants, although Farrow failed to serve the Carrier Defendants. After the IOA Defendants moved to dismiss, Farrow abandoned the case without notice to any party or the court. The trial court dismissed the FTI RICO Action on May 9, 2025. (D.E. 57; 58).

## II.    Farrow Files and Abandons Unrelated Cases

Farrow's RICO actions are not the only actions Farrow has filed and abandoned.[3] Last year, at least thirteen of Farrow's clients filed complaints against him with The Florida Bar. When Farrow was served with these complaints, he failed to respond. As a defense to his failure to respond, Farrow allegedly told The Florida Bar that the complaints were either fake or otherwise caused by the cyber-conspiracy. (Compl. ¶¶ 730, 820). Rejecting those allegations, The Florida Bar filed contempt proceedings against Farrow on November 25, 2024 (*id.* at pg. 6), which remain pending before the Florida Supreme Court.

Even after this suit was filed, Farrow has continued to abandon cases, and he has continued to "mak[e] excuses based on his alleged victimhood of an elaborate cyber-hacking conspiracy." Ex. 4 (*Strenger v. RMC Consulting*, No. 2:23-cv-1226-SPC-NPM (M.D. Fla.)) at 1. For example,

---

[3]      *See Garcia v. Porsche Financial Services, Inc*., No. 1:24-cv-21498-BB (S.D. Fla. July 15, 2024) (dismissing by default a case in which Farrow was plaintiff counsel because there was no response to the motion to dismiss, no response to the defendant's request to schedule mediation, and no response to a court order directing one); *Qualman v. Quantify, Inc.,* No. 2022- 013768-CA-01 (Fla. 11th Jud. Cir. July 8, 2024) (dismissing case in which Farrow was plaintiff counsel due to his failure to appear without explanation at a calendar call).

on February 18, 2025, Magistrate Judge Mizell issued an order to show cause due, among other things, to Farrow's failure to appear in Court on two separate occasions.  (D.E. 45).  In response, Farrow claimed the show cause order "was not drafted by Magistrate Mizell, but likely the workings of an AI application which is being used by the perpetrators" of a "cyber-attack."  (D.E. 48).  Magistrate Mizell found Farrow's "fanciful suggestions" to be an "elaborate excuse for not honoring professional obligations and otherwise avoiding accountability."  (Ex. 4 (*Strenger* Order) at 2-3).

### III.   Plaintiffs Repackage Prior Suits into This Action

Spanning 267 pages, the Complaint offers Farrow's most elaborate and comprehensive excuse to date.  Although largely incomprehensible, the Complaint makes one thing clear: Farrow faces significant legal and financial problems, including, among other things, (i) complaints submitted to The Florida Bar by his former clients; (ii) The Florida Bar's investigation into Farrow's misconduct, its decision to seek suspension of his law license, and its subsequent decision to request that the Florida Supreme Court hold Farrow in contempt; (iii) eviction proceedings filed against Farrow Law by its landlord; (iv) multiple adverse legal decisions by state and federal courts, including a more than $15 million punitive damages judgment against Farrow for engaging in improper conduct related to the IOA RICO Action that remains unpaid; (v) the closure of his bank accounts; and (vi) a police report filed by a former client.

Farrow believes that the common denominator of his problems is not his own misconduct, but an elaborate and fanciful cyber-conspiracy involving 28 different unaffiliated corporate and individual Defendants.  Farrow believes this conspiracy extends as far as rearranging his personal photo albums and replacing his contacts with "perfect imitations."  Adverse witnesses, angry

clients, and Miami Herald reporters[4] (Compl. ¶ 923) are all fake.  Emails from the court are "spear-phishing" emails (*id.* ¶¶ 238, 730).  Calls from opposing counsel, The Florida Bar (*id.* ¶ 971) and clients (*id.* ¶ 967) are AI voice calls.  Although initially focused on Farrow's legal career, the cyber-conspiracy has now extended to imitating his parents, his "trusted" friends, his IT vendor, a concierge, the customer service representatives at Wells Fargo, and the Florida Department of Children and Families. (*Id.* ¶¶ 653, 688, 779, 780).

Farrow alleges that the "only one[]" capable of the cyber-conspiracy is FTI (although he did not serve FTI with this action).  He alleges that the "only ones" with motive to orchestrate the cyber-conspiracy are the IOA Defendants, who are purportedly afraid of Farrow's RICO Actions (although the IOA Defendants prevailed in every case against Farrow).  He alleges that the other 24 Defendants are seemingly guilty by association (although the Complaint does not plead any such association).

Based solely on speculation, Farrow asserts 8 claims against 28 Defendants: Violations of the Federal RICO statute (Counts I and II); Injunction under the Florida RICO act (Count VI); Computer Fraud and Abuse Act ("CFAA") (Count III); Aiding and Abetting (Count V); Negligence (Counts IV and VII); and a Wrongful Injunction (Count VIII).  *See* Appx. A (listing claims and Defendants).

## LEGAL STANDARDS

**Rule 12(b)(1):** Constitutional standing requires: (1) an injury in fact—an invasion of a legally protected interest, which is concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and defendant's conduct; and (3) that

---

[4]     According to the Complaint, Ben Wieder is both a "fake" journalist not employed by the Miami Herald and a real journalist whose articles are published in the Miami Herald.

it is likely, not merely speculative, that a favorable decision will redress that injury. *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992).

**Rule 12(b)(6):** To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Randall v. Scott*, 610 F.3d 701, 708 n.2 (11th Cir. 2010) (citation omitted). The Court is not required to accept a plaintiff's legal conclusions. *See Iqbal*, 556 U.S. at 678. Mere "labels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to state a claim. *Id.* at 678-79.

## ARGUMENT

## I.    PLAINTIFFS HAVE FAILED TO PLEAD AN INJURY-IN-FACT FAIRLY TRACEABLE TO ANY DEFENDANT

To establish Article III standing, Plaintiffs must show a "concrete and particularized" injury that is "fairly . . . traceable to the challenged action of the defendant" based on the well-pleaded allegations of the complaint. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005) (internal quotations omitted). The Complaint pleads each of Farrow's facially unrelated grievances as: pop-up messages on Farrow's computer (Compl. ¶ 657) "bogus" and/or "spear phishing emails" (*id.* ¶ 653); "AMBER" alerts (*id.* ¶ 937); "rearrange[d] photo albums" on Farrow's cell phone (*id.* ¶¶ 732-33); harassing phone calls from angry clients (*id.* ¶ 773); calls from opposing counsel in other cases (*id.* ¶ 675); and phone calls from "perfect imitation[s]" of "clients, staff members, and family members" (*id.* ¶¶ 648, 775). The Complaint alleges that these collectively required him to close his law firm (*id.* ¶ 1015) and resulted in "emotional trauma to a

baby," Farrow, and his wife (*id.* ¶ 112).  But the Complaint includes no factual allegations tying any of these grievances to any of the 28 Defendants named here.

Even most generously construed, Plaintiffs' injuries arise, if at all, from their alleged victimhood of cyber-warfare tactics carried out by FTI.  (*Id.* at pg. 9).  Plaintiffs failed to serve FTI.  As such, it is not a Defendant, and it is well-established that Plaintiffs cannot "establish . . . traceability" based "on "actions performed by an independent third-party rather than the named defendants."  *Berrocal v. AG*, 136 F.4th 1043, 1050 (11th Cir. 2025).  Thus, for Plaintiffs to have standing here, they must establish a causal link between (1) FTI and the cyber-conspiracy and (2) each Defendant and FTI's alleged cyber-warfare tactics.  They fail on both fronts.

First, Plaintiffs allege that FTI is responsible for the cyber-warfare against him because FTI was the "only one[]" with the "army of cyber-elites" capable of performing the attacks. (Compl. ¶ 203).  That speculation, at most, pleads that it is *possible* for FTI to have carried out the scheme.  *Sinaltrainal v. Coca-Cola Co*., 578 F. 3d 1252, 1261 (11th Cir. 2009) ("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss.").  Even if that speculation could establish standing, it is not plausible compared to the "obvious alternative"—that there is no scheme at all.  *Dental Ass'n v. Cigna Corp*., 605 F. 3d 1283, 1290 (11th Cir. 2010) ("courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],'' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.").  The Complaint offers no basis to infer that the series of "perfect imitations" are imitations at all.  As one court already reminded Farrow, court orders and notices are real.  Ex. 4 (*Strenger* Order) at 2.  As The Florida Bar reminded Farrow in its contempt proceedings, the complaints from his former clients are real.  And as multiple courts, including this Court, have reminded Farrow, the consequences of abandoning cases are real too.

Moreover, Plaintiffs do not even plausibly plead that FTI is the "only one[]" capable of performing the attacks.  For example, Plaintiffs concede that they "routinely" connect their cell phones, "protected computers," and even their "baby monitor" to a variety of free public Wi-Fi hotspots near their home or law office.  (Compl. ¶¶ 291-92, 321).  Although this allegation might make the theft of Farrow's client files more plausible, such theft would not require an "army of cyber elites." (*Id.* ¶ 319 (alleging that information theft "commonly occurs" on public Wi-Fi)).  In all, FTI's involvement in any cyber-conspiracy rests on nothing but facially implausible speculation.

Second, the Complaint fails to plead any causal link between any Defendant and FTI's alleged cyber-warfare tactics.  Most Defendants are not alleged to have any interaction with FTI at all, let alone a case-linked interaction.[5]  At most, the Complaint pleads that the IOA Defendants retained FTI in one or two cases.  If that were sufficient, the Complaint would also state an injury fairly traceable to "the New York District Attorney," large "oil companies," and "Fortune 100 companies." (Compl. ¶ 138).

At bottom, "[b]ecause the [Defendants] didn't do (or fail to do) anything that contributed to [Plaintiffs'] harm," Plaintiffs "cannot meet Article III's traceability requirement."  *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc).

## II.     THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING

The Complaint is a "quintessential 'shotgun pleading'" that warrants dismissal with prejudice.  *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).  Spanning 267 pages and attaching 131 pages of exhibits, the Complaint "is in no sense the 'short and plain statement of the

---

[5]     For example, the Complaint alleges that FTI provides services for "insurance carriers, such as the Carrier Defendants."  (Compl. ¶ 135).  The Complaint does not allege that FTI actually provided any services to the Carrier Defendants.  Nor would an unrelated business relationship make the Carrier Defendant's liable for FTI's conduct.

claim' required by Rule 8 of the Federal Rules of Civil Procedure." *Id.* Instead, it is a shotgun pleading of the sort the Eleventh Circuit "has been roundly, repeatedly, and consistently condemning for years." *Davis v. Coca-Cola Bottling Co. Consol*, 516 F.3d 955, 979 (11th Cir. 2008). There are four types of shotgun complaints—two of which are relevant here. The Complaint asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," and is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *See Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1321-23 (11th Cir. 2015). Each of those deficiencies independently violates Rule 8. *Id.* As such, the Complaint should be dismissed.

First, the Complaint indiscriminately lumps groups of Defendants together without informing each Defendant separately of the allegations that apply to it. *See Weiland*, 792 F.3d at 1323. For example, outside of jurisdictional allegations, the Complaint never even mentions any of the 12 unaffiliated insurance companies. Instead, the Complaint pleads the "Carrier Defendants" acted together as a single unit 71 times, even when executing contracts, committing purported "wire fraud," and communicating with the Florida Department of Insurance. (Compl. ¶¶ 965-66). Although each Carrier Defendant's liability seemingly hinges on the alleged appointment of one of the IOA Defendants as an "agent" (*id.* ¶ 48), Plaintiffs do not plead which Carrier Defendant appointed which IOA Defendant at which time or in what state or under what terms or for what purpose. The Complaint then further groups the Carrier Defendants into the "Aiding and Abetting Defendants," the "RICO Defendants," and, at one point, the "Threat Actor Defendants."

Moreover, the "Threat Actor Defendants" are grouped together <u>359 times</u> in the Complaint, including when they committed each of the alleged "hacks" or RICO predicate acts. That alone

12

renders the Complaint a shotgun pleading.  Compounding that fatal deficiency, the Complaint defines this group inconsistently.  Initially defined as the IOA Defendants and the FTI Non-Parties, the Threat Actor Defendants are also defined to include the IOA Defendants, FTI Non-Parties, Carrier Defendants, the Joe Taylor Defendants, and the Strategic Alliance Defendants (*id.* ¶ 232). The Strategic Alliance Defendants are circularly defined as the Threat Actor Defendants and the Joe Taylor Defendants.  (*Id.* ¶ 190).  In all, Defendants are left "to guess which of them did what in the [Plaintiff's] eyes." *McDonough v. City of Homestead, Fla.*, No. 22-12637, 2023 WL 3035215, at *2 (11th Cir. Apr. 21, 2023).

Second, the Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322.  For example, the Complaint alleges Farrow's "niche" pro bono work (Compl. ¶¶ 80-82); his choir at "weekly mass" (*id.* ¶ 83); his mother's experience with customer service at Wells Fargo (*id.* ¶ 778); his credit score (*id.* ¶ 85); and a dozen unexplained allegations about the "TLE" account, which were seemingly copied and pasted from the dismissed Carrier RICO Action (*id.* ¶¶ 356-59; 538; 547). Indeed, the Complaint alleges more facts about Farrow's marriage (*id.* ¶¶ 89; 102; 104) than it alleges about any individual Carrier Defendant.  Although the Complaint never alleges any facts plausibly connecting these allegations to his claims against Defendants, each of the 940 factual allegations in the Complaint are incorporated into each count.  *See Louis v. McIntosh Auto Grp.*, No. 21-cv-62584, 2022 WL 610645, at *2 (S.D. Fla. Feb. 11, 2022) (Smith, J.) (dismissing a shotgun pleading because "[t]he Complaint includes confusing, immaterial statements that are not obviously connected to any specific cause of action.").

In all, the Complaint is a shotgun pleading and should be dismissed with prejudice on this basis alone.  The Complaint is Farrow's ninth attempt to convert "what appears to be a garden-

variety contract dispute" into a sprawling RICO action involving the IOA Defendants. *See* Ex. 1 (IOA RICO Dismissal Order). He has filed at least six (6) emergency motions about this cyber conspiracy. He has never set forth a single coherent narrative, let alone any viable claims. At least two (2) of these complaints have been dismissed for improperly lumping all Defendants together—a deficiency he repeats here.[6] He deserves no further chances. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (dismissal with prejudice on shotgun grounds is warranted where "plaintiff had fair notice of the defects and a meaningful chance to fix them"); *Albra v. Moody*, NO. 19-cv-61677, 2019 WL 13549179, at *4 n.2 (S.D. Fla. Nov. 19, 2019) (Smith, J.) (noting that "Plaintiff has already had his 'one chance'" in a similar complaint in a separate case).

## III.   PLAINTIFFS' CIVIL RICO CLAIMS (COUNTS I, II, & VI) FAIL ON MULTIPLE INDEPENDENT GROUNDS

To state a claim under either the federal and Florida RICO acts, Plaintiffs must establish six elements: "that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering" that (5) "caused" (6) an "injury." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020); *Ferrell v. Durbin*, 311 F. App'x 253, 256 n.5 (11th Cir. 2009) ("the analysis of the Federal RICO claims is equally applicable to the Florida RICO claims."). A claim must be dismissed if it fails to plausibly allege any one of these six elements." *DJ Lincoln Enters. v. Google LLC*, No. 21-12894, 2022 WL 203365, at *2 (11th Cir. Jan. 24, 2022).

---

[6]   The court in the IOA Action dismissed Plaintiff's "inartfully pled" second amended complaint on a shotgun basis. Ex. 1 (IOA RICO Dismissal Order). The court specifically instructed Plaintiff to "replead" his claims, state "in simple terms and with particularity each Defendant's role in the [RICO] schemes and the factual allegations underlying plausible predicate acts of racketeering," and "leave[] out the rambling narrative of facts irrelevant to any of the causes of action[.]" *Id.* at 6. On remand, the trial court found that he "improperly lumped" Defendants together, "ineffectively raise[d] the same deficient factual allegations," and "abused the privilege of amending the pleadings." *Spagnuolo v. IOA*, 59-2021-CA-002275 (Sept. 17, 2024). Plaintiffs repeat the same deficiencies here.

A.      **Plaintiffs Lack RICO Standing.**

To have standing under RICO, Plaintiffs must establish "both an injury to business or property" and "proximate cause linking the defendants' pattern of racketeering activity with the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014).  In other words, Plaintiffs "must allege economic injury arising from the defendant's actions." *Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352, 1361 (11th Cir. 2011).

The Complaint does not clearly identify any economic injury at all.  Although the Complaint alleges "emotional trauma to a baby" and damage to Farrow's "reputation," neither are economic injuries under RICO.  *See The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 35 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 1662, 194 L. Ed. 2d 768 (2016).  At most, the Complaint pleads that Farrow Law was "effectively closed" on July 10, 2024.  Outside of a conclusory allegation about "lost income," the Complaint does not plead what, if any, economic injury arises from the effective closure of Farrow Law.  Farrow and his law firm were able to file new complaints after July 10, 2024, including the FTI RICO Action.  Moreover, Farrow continued to be the attorney of record in cases for clients after July 10, 2024.  *See* Ex. 4 (*Strenger* Order).

Even assuming Farrow's purported lost income was sufficiently pled, the Complaint does not allege that the loss "was proximately caused by the claimed RICO violations."  *Corcel Corp. v. Ferguson Enters.*, 551 F. App'x 571, 575 (11th Cir. 2014) (citation omitted).  Farrow's reputation was damaged by his own conduct, not by any hacking scheme.  Judges called *his* complaints "garbled," *his* motions "incomprehensible," and *his* litigation tactics "deplorable." *Paerosol Global Partners LLC v. Steve Garlek.*, No. 20-009041-CA (Fla. 15th Jud. Cir. Ct., Palm Beach Cty., Nov. 15, 2021) (finding Farrow's "deplorable actions" have "no place in our system of justice.").  Farrow does not, and cannot, blame the cyber-conspiracy for his own filings.

15

Nor can he blame the cyber-conspiracy for the independent decisions of his former clients to send angry emails or write negative reviews. Documents in the public record show that Farrow has repeatedly failed to appear for court mandated hearings or otherwise failed to respond to dispositive motions on behalf of his clients. Ex. 4 (*Strenger* Order) (collecting cases). For example, Farrow abandoned the IOA Defamation Action, the IOA RICO Action, the Carrier RICO Action, and the FTI RICO Action without filing any notice, attempt to voluntarily dismiss, request an extension of time, motion to reopen the judgment, or notice of appeal. He has continued this pattern even after filing this action. On March 21, 2025, a Florida trial court judge dismissed yet another case that Farrow filed on behalf of Spagnuolo, finding that Farrow: (i) failed to respond to a court order; (ii) failed to appear for a hearing; and (iii) failed to contact the court even a single time in 14 months. *Spagnuolo v. IOA*, No. 2024-CA-000099, D.E. 16 (Fla. 18th Jud. Cir. Ct. March 21, 2025) ("The Court exhausted all efforts to include Plaintiff and Farrow in this action."). Farrow does not explain how the conspiracy permitted him to file, but required him to abandon, these cases. Nor does he explain why he could file new suits, but not notify courts or defendants in pending suits of his intent to abandon those cases. Indeed, it strains credulity that Farrow, with his purported collaboration with the FBI, could not borrow a phone to call court chambers, appear in court, visit the clerk's office to file by hand, or communicate with the court or defendants in these actions.[7] At bottom, any financial injuries pled in the complaint were caused by Farrow's own mistakes, not some sprawling cyber-conspiracy. *See AstraZeneca Pharms.*, 634 F.3d at 1369 (no RICO standing when plaintiffs' "own business mistakes caused their loss").

---

[7]  Farrow's failure to appear is similarly the sole cause of the default judgment in Farrow's eviction proceeding. *See Regus Management v. Farrow Law*, 2024-238200 (Fla. 15th Jud. Cir. Ct., Miami-Dade Cty, May 19, 2025).

**B.      The Complaint Does Not Plausibly Allege RICO Predicate Acts.**

Plaintiffs fail to allege any RICO predicate acts, let alone two predicate acts by each RICO

Defendant.  *See Cisneros*, 972 F.3d at 1208.

**a.      CFAA Violations Are Not Cognizable Predicate Acts**

To qualify as a RICO predicate act, it "must constitute a violation of one of the state or

federal laws described in 18 U.S.C. §1961(1)."  *Crawford's Auto Center, Inc. v. State Farm Mutual

Auto. Ins. Co*., 945 F.3d 1150, 1158 (11th Cir. 2019).  Violations of CFAA are not included in the

statutory list of predicate acts. *See* 18 U.S.C. §1961(1).  Therefore, Plaintiffs cannot rely on

purported violations of the CFAA as qualifying predicate acts.  *Rickett v. Smith*, 2015 WL

3580500, at *4 (W.D. Ky. June 5, 2015) ("Section 1961's list of racketeering activity does not

include violations of the CFAA, and thus they may not serve as predicate offenses.").  Even if they

could, these violations fail for the same reasons as Plaintiffs' substantive CFAA claims.  *See*

Section III.

**b.      Wire Fraud Claims Fail Without Fraud or Monetary Loss**

Plaintiffs' wire fraud allegations fare no better.  "[W]ire fraud occurs when a person (1)

intentionally participates in a scheme to defraud another of money or property and (2) uses the

[. . .] wires in furtherance of that scheme."  *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290

(11th Cir. 2010).  Wire fraud allegations, like all fraud allegations, are subject to Rule 9(b)'s

heightened pleading standard.  *See Rodgers v. Addy*, 2021 WL 4487903, at *3-4 (S.D. Fla. Sep.

27, 2021).  Accordingly, Plaintiffs are required to plead "(1) the precise statements, documents or

misrepresentations made; (2) the person making a misrepresentation; [and] (3) how these

misrepresentations misled Plaintiffs."  *Id.*

Here, however, Plaintiffs "have lumped together the Defendants and failed to meet the

heightened pleading threshold."  *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp.

3d 1344, 1363 (S.D. Fla. 2015).  Plaintiffs allege that all 12 Carrier Defendants fraudulently appointed one or more of the IOA Defendants at least twice since 2019.  The Complaint alleges no other facts about any appointment or purported misrepresentation relevant thereto.  Critically, the Complaint fails to plead the "time and place" of any allegedly fraudulent statement, and they fail to "set forth specific allegations as to each defendant."  *Id.*  As such, they have failed to plead wire fraud as a predicate act.

Plaintiffs also allege that, between May 28, 2024, and January 2025, Farrow and his wife received over "30 AI Voice Calls."  Of those 30, the Complaint purports to identify three calls as "wire fraud": two phone calls from purported angry clients (Compl. ¶ 967; ¶ 969) and one call from The Florida Bar fraudulently asking for his current cell phone number.  (*Id.* ¶ 968).  But, for reasons not explained in the Complaint, Plaintiffs believe these callers were "perfect imitations." That is not plausible, and it is certainly not pled with enough particularized facts to suggest fraud as opposed to the obvious alternatives.  At worst, Plaintiffs plead that their former clients want to fight Farrow, not that Defendants sought to defraud Plaintiffs.

Critically, none of the AI Voice Calls or Carrier's appointment of IOA are pled to have sought to obtain any money from any Plaintiff.  The federal wire fraud statute, 18 U.S.C. § 1343, is not a catchall prohibition on "all acts of dishonesty."  *Kelly v. United States,* 140 S. Ct. 1565, 1571 (2020).  Absent any allegation that "an object of the[] dishonesty was to *obtain* . . . money or property," *Kelly,* 140 S. Ct. at 1568 (emphasis added), Plaintiffs necessarily fail to plead wire fraud as a predicate act.

## C.     The Complaint Fails to Plead a Cognizable RICO "Enterprise."

A RICO enterprise is "a continuing unit that functions with a common purpose."  *Boyle v. United States,* 556 U.S. 938, 948 (2009).  To plead an association-in-fact enterprise, as Plaintiffs purport to do here, Plaintiffs must plead both a common "purpose" and continuing relationships

between the associates of the enterprise.  *Omnipol, A.S. v. Multinational Def. Servs., Ltd. Liab. Co.*, 32 F.4th 1298, 1309 (11th Cir. 2022).  Plaintiffs fail to do so.

First, Plaintiffs fail to plausibly plead a shared purpose.  Although far from clear, the Complaint appears to allege that Defendants had the goal to "sabotage" Farrow and his law firm in order to prevail in the IOA RICO Action in 2019.  (Compl. ¶ 208).  But "the relevant 'purpose' in an association-in-fact enterprise is the members' shared purpose of engaging in *illegal activity.*" *Al-Rayes v. Willingham,* 914 F.3d 1302, 1308 (11th Cir. 2019) (emphasis added).  The Complaint merely recasts a non-fraudulent motive—to prevail in litigation—as improper.  The Complaint is devoid of any facts suggesting a motive to prevail in litigation through a multi-year criminal conspiracy to hack Farrow's cellphone.  *Se. Laborers Health & Welfare Fund v. Bayer Corp.,* 655 F. Supp. 2d 1270, 1278 (S.D. Fla. 2009) (Middlebrooks, J.) (dismissing RICO claim where complaint "fails to adequately allege any facts which would indicate the existence of a common purpose to commit racketeering acts").

Even assuming that the Complaint identified a fraudulent purpose, it has failed to allege "a *common* purpose, formed in collaboration with [other members of the enterprise]." *Cisneros*, 972 F.3d at 1213.  The Complaint speculates that members of the purported enterprise collectively decided at some point to retaliate against Farrow and his family for five years due to litigation involving the IOA Defendants.  Such "conclusory statements that the defendants associated with [another] in furtherance of an illegal scheme" are "not sufficient to show the existence of a RICO enterprise." *Dixon v. Green Tree Servicing, LLC*, 859 F. App'x 373, 377 (11th Cir. 2021); *Ray*, 836 F.3d at 1352-53 (same).

Second, Plaintiffs must plead "more than" "just a common purpose." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1073 (11th Cir. 2017).  They must plead "relationships between the

associates of the enterprise." *Id.* Pleading sufficient relationships "certainly requires more than suggesting that at some unknown point in past the defendants 'knew' and 'associated' with each other." *Omnipol, A.S. v. Multinational Def. Servs., Ltd. Liab. Co.*, 32 F.4th 1298, 1309 (11th Cir. 2022). Plaintiffs do not even go that far. For example, Plaintiffs do not allege that *any* Carrier Defendant ever "associated" with FTI. Nor does the Complaint allege that the Joe Taylor Defendants had an ongoing relationship with any RICO Defendant.

At most, Plaintiffs allege that a broad agency relationship existed between the IOA Defendants and the Carrier Defendants. As in the Carrier RICO Action, Plaintiffs allege that the Carrier Defendants, by appointing one or more of the IOA Defendants as a broker, certified their willingness to be bound by all of the IOA Defendants' actions. And as in the Carrier RICO Action, this allegation dooms the RICO claim here. This Court has already held that Plaintiffs cannot allege a RICO enterprise based on an agency relationship between the IOA and Carrier Defendants. Carrier Dismissal Order, at 3.

In all, Plaintiffs cannot establish association by speculation. The Eleventh Circuit's decision in *Cisneros* is instructive. There, like here, the "complaint contain[ed] no allegations about specific interactions between" [members of the enterprise], nor allegations regarding the origins or scope of the alleged scheme." 972 F.3d at 1213. There, like here, the plaintiff "simply asked [the Court] to speculate that [one defendant] decided at some point to pursue fraud, and that [the other defendants] were involved in that decision." *Id.* And there, as should be the result here, the complaint failed to plead a RICO enterprise.

### D.    Plaintiffs Fail to Plead "Pattern" and "Continuity."

To plead a "pattern of racketeering activity," Plaintiffs must plead facts establishing that the "predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1259, 1264 (11th Cir. 2004). Plaintiffs must show either closed-ended

continuity (*i.e.*, "a series of related predicates extending over a substantial period of time") or open-ended continuity (*i.e.*, "either that 'the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,' or that 'the predicate acts or offenses are part of an ongoing entity's regular way of doing business'"). *Id.* at 1265 (citations omitted). Plaintiffs have not shown either.

To plead closed-ended continuity, Plaintiffs must allege facts showing that Defendants "committed two or more predicate acts within a ten-year time span[.]" *Jackson*, 372 F.3d at 1264. As discussed above, Plaintiffs fail to identify any predicate acts, let alone any acts attributable to any Defendants. And the Complaint's conclusory allegations that non-specified predicate acts somehow constitute a "pattern" are insufficient. *See Doria v. Class Action Servs., LLC*, 2009 WL 10699955, at *7 (S.D. Fla. Mar. 4, 2009) (conclusory allegations that predicate acts "range[d] from approximately 2002 through 2008" insufficient).

Plaintiffs similarly cannot plead open-ended continuity. The allegation that Defendants' actions "threaten future criminal conduct" (*see, e.g.*, Compl. ¶¶ 988-89) is insufficient under binding Eleventh Circuit precedent. "An open-ended continuity cannot be shown by conclusory allegations that once begun, the alleged misconduct threatens to continue into the future." *Kivisto v. Miller, Canfield, Paddock and Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011). That is all Plaintiffs allege here, and as such, Plaintiffs have failed to plead a pattern of racketeering activity.

### E.   The RICO Conspiracy Claim (Count II) Fails with the Underlying RICO Claim.

"Because the [] Complaint fails to allege a substantive RICO Claim, Plaintiffs' RICO conspiracy claim . . . necessarily fail as well." Carrier Dismissal Order, at 4. *See also Jackson*, 372 F.3d at 1269 ("If the underlying cause of action is not viable, the conspiracy claim must also fail.").

In all events, the Complaint does not plausibly allege an illegal agreement between any RICO Defendant. To plead a RICO conspiracy, Plaintiffs must plead either (1) an agreement with the overall objective of the conspiracy; or (2) an agreement to commit two predicate acts. *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1217-18 (S.D. Fla. 2020). The Complaint is devoid of any facts about the interactions, agreements, or conspiracies between any Defendants. *See Carter v. MGA, Inc.*, 189 F. App'x 893, 895 (11th Cir. 2006) ("But Plaintiffs alleged no facts to show or to create a reasonable inference that Defendants made an agreement. Plaintiffs' conclusory allegations that Defendants conspired with each other are insufficient to survive a motion to dismiss.").

At most, the Complaint attempts to allege an agency relationship between the Carrier Defendants and the IOA Defendants. Any civil conspiracy claim would be barred by the intracorporate conspiracy doctrine. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (under the doctrine, the "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy."); *Prof'l LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1372 (S.D. Fla. 2015). As such, Count II should be dismissed.

### F.     Temporary and Injunctive Relief (Count VI) Is a Remedy, Not a Claim.

Count IV for temporary and injunctive relief under Florida RICO should be dismissed. Under the Florida RICO Act, injunctive "relief is a remedy and is not properly brought as an independent, substantive claim." *XL Funding, Inc. v. Griggs*, 2021 WL 1976028, at *8 (S.D. Fla. Apr. 26, 2021); *GlobalOptions Servs. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1302 (M.D. Fla. 2015) (same). All the more here, because Plaintiffs do not even assert any substantive claims under Florida RICO for which this could be a remedy. As a result, Count VI should be dismissed.

IV.     **Plaintiffs' CFAA Claim (Count III) Should Be Dismissed.**

Congress enacted the CFAA primarily as a criminal statute to punish computer hacking and allowed private civil actions only under a "narrow set of circumstances." *St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1057 (M.D. Fla. 2018).  To state a civil claim under the CFAA, a plaintiff must allege: (1) the "defendant intentionally accessed a protected computer," (2) "without authorization or exceeding authorized access," (3) thereby obtaining information, and (4) causing certain types of "damage or loss of at least $5,000.00." *777 Partners LLC v. Pagnanelli*, No. 20-cv-20172, 2021 WL 2038175, at *4-5 (S.D. Fla. Mar. 8, 2021) (citing 18 U.S.C. § 1030(g)).

Here, Plaintiffs copy-and-paste the legal elements of a CFAA claim untethered from any well-pled fact.  As a threshold matter, the CFAA claim still suffers from the same fundamental defect as the RICO claims—even most generously construed, the Complaint charges the FTI Non-Parties with misconduct, not Defendants.  Accordingly, Plaintiffs fail to plead that any *defendant* "intentionally accessed a protected computer."  18 U.S.C. § 1030(g).

Even assuming the Threat Actor Defendants are liable for FTI's alleged misconduct, the Complaint fails to plead a CFAA violation.  Plaintiffs incorporate over 900 paragraphs of the Complaint without clearly identifying which alleged "hack" constitutes a CFAA claim.  Plaintiffs' unexplained screenshots are either incomprehensible or inconsistent with Plaintiffs' claims.  Either way, they do not plausibly allege any actionable access to a protected computer.  For example, Farrow claims his work computer was hacked with "unauthorized software installations" because his computer installed "200% more application installations" in the three-month period from April 11, 2024, through July 2024, than in the years prior.  (Compl. ¶ 757).  The screenshot shows the exact opposite: 13 installations between April 11, 2024, through July 2024, compared to over 30 installations in the years prior.  Moreover, Plaintiffs do not explain how these "downloads"—of

applications including Windows, Paint, and a clock—were unauthorized, as opposed to automatic downloads that Farrow, or his IT vendor, approved.  (*Id.*).

Plaintiffs' CFAA claim also fails because they do not plead a single unauthorized access that both resulted in Defendants "obtaining information" *and* $5,000 dollars in loss as required by the CFAA.  18 U.S.C. § 1030(g).  Congress deliberately limited the definition of a compensable "loss" to (1) the reasonable cost of responding to a hack and restoring the affected data and (2) lost revenues or costs incurred because of an interruption in service.  *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017); *Resdev, LLC v. Lot Builders Ass 'n, Inc.*, No. 04-cv-1374, 2005 WL 1924743, at *2-5 (M.D. Fla. Aug. 10, 2005) (rejecting argument that "loss" covers lost value of a trade secret); *Nexans Wires S.A. v. Sark—USA, Inc.*, 319 F. Supp. 2d 468, 477-78 (S.D.N.Y. 2004) (concluding that loss of business from defendant's use of proprietary information was not covered by CFAA).

None of the hacks in the "Device and Email Hacking Table" (Compl. ¶ 937) are actionable under the CFAA.  Some hacks—like the hack of Plaintiffs' email addresses—are not even alleged to be hacks of protected computers.  Of the computers or phones identified, most are not alleged to *either* have involved an effort to "obtain information" *or* to have resulted in financial loss.  *Id.* ("change of password," "unauthorized installation," "phishing alerts from AMBER," and "locked out of iPhone").  Both are required at the pleading stage.  To the extent Plaintiffs rely on Farrow's lost income to establish the requisite financial loss, they do not plead a corresponding "interruption of service" that was caused by, nor tie the lost income to, any specific hack.  *Mortg. Now, Inc. v. Stone*, No. 09-cv-80, 2010 WL 11519201, at *5 (N.D. Fla. Sept. 29, 2010) ("lost profits" untethered to an "interruption of service" "do not constitute loss under the CFAA").  Although a few hacks allegedly rendered computers inoperable, no "unauthorized access" is alleged to have

caused the required $5,000 in loss.  Nor is any Defendant alleged to have obtained information from the hack.  Without pleading an actionable "unauthorized access," the CFAA claim must be dismissed.

## V.    Aiding and Abetting (Count V) Fails as a Matter of Law

Count V alleges that the Aiding and Abetting Defendants aided and abetted the Threat Actor Defendants in obtaining unlawful access to protected computers.  (Compl. ¶¶ 38-39, 198-99, ¶¶ 1134-35).  Plaintiffs appear to assert that the Defendants aided and abetted CFAA violations, either as pled in Count III or as predicate acts to a RICO claim.  As discussed above, a CFAA violation is not a predicate act under RICO.  *See supra,* Section III.  In all events, Plaintiffs have failed to plead a substantive CFAA violation.

Even if Plaintiffs had pled a CFAA violation (they have not), Plaintiffs fail to state a claim for aiding and abetting such violation.  As a threshold matter, the CFAA does not provide for aiding and abetting liability.  Courts do not read civil secondary liability into laws that do not provide for it.  *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994).  And here, there is no basis to expand liability under the CFAA, which expressly limits its private right of action to suits "*against the violator.*"  18 U.S.C. § 1030(g) (emphasis added).  Indeed, nothing in CFAA creates, or even mentions, aiding and abetting liability.  *See Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1344 (N.D. Ga. 2017); *Advanced Fluid Systems, Inc. v. Huber*, 28 F.Supp.3d 306, 328 (M.D. Pa. 2014) ("The CFAA does not create a cause of action for aiding and abetting liability."); *Podium Corp. v. Chekkit Geolocation Services, In*c., No. 2:20-cv-352, 2021 WL 5772269, at **8-9 (D. Utah Dec. 6, 2021) (same).[8]

---

[8]    Courts in the Eleventh Circuit have reached different conclusions.  *Compare Coll Builders Supply, Inc. v. Velez*, No. 17-cv-933, 2017 WL 4158661, at *10 (M.D. Fla. Aug. 31, 2017) (dismissing CFAA conspiracy claim based on allegations that one defendant acted "at the behest of and on the behalf of another defendant"), *report and recommendation adopted*, No. 17-cv-933,

Even assuming the claim was cognizable under law, Plaintiffs fail to plead facts suggesting that any Defendant knowingly assisted any unauthorized access to a computer.  "Allegations of aiding and abetting that do not also allege that the defendant had actual knowledge or substantially assisted the primary wrongdoer are subject to dismissal."  *See Pupke v. McCabe*, No. 13-80860, 2014 WL 12621479, at *4 (S.D. Fla. Jan. 30, 2014).  Outside of jurisdictional allegations, most of the Aiding and Abetting Defendants are not specifically identified in the Complaint, and there certainly are no allegations that those defendants helped anyone gain unauthorized access to a protected computer.  *See Edwards v. Prime, Inc*., 602 F.3d 1276, 1300 (11th Cir. 2010) ("The mere use of the words 'conspiracy' and 'aiding and abetting' without any more explanation of the grounds of the plaintiffs' entitlement to relief is insufficient.").  Where the Complaint pleads facts about an Aiding and Abetting Defendant, those facts contradict that Defendant's knowing participation.  For example, the Complaint alleges the Threat Actor Defendants "stole[]" Mr. Wieder's identity "to prepare articles" published in the Miami Herald.  (Compl. ¶ 903).  This statement that Mr. Wieder's information was stolen by the Threat Actor Defendants is obviously inconsistent with any notion that Mr. Wieder aided and abetted those exact same defendants in committing a crime by gaining unauthorized access to protected computers.  In all events, Plaintiffs fail to plead any interaction between any Aiding and Abetting Defendants and the Threat Actor Defendants.  As such, Plaintiffs have failed to state a claim against any Aiding and Abetting Defendant, and Count V must be dismissed.

---

2017 WL 4125641 (M.D. Fla. Sept. 18, 2017) *with Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F.Supp.3d 1284, 1296 (S.D. Fla. 2017) ("[D]irect access to a computer is not required and a defendant can be held liable under the CFAA under an aiding and abetting theory of liability.").

## VI.    THE NEGLIGENCE CLAIMS (COUNTS IV AND VII) FAIL AS A MATTER OF LAW

The Complaint asserts formulaic negligence claims against the Carrier Defendants (Count VII) and the Law Firm Defendants (Count IV).  In each count, Plaintiffs appear to allege that each of the Carrier and Law Firm Defendants had a duty of "investigation," which, if properly performed, would have uncovered the cyber-conspiracy, and thus prevented Plaintiffs' injuries.  This Court already dismissed a substantively identical negligence claim.  Carrier Dismissal Order, at 4.  The negligence claims here fare no better.  To state a claim for negligence under Florida law, the Complaint must allege, among other things, that "the defendant had a duty to protect the plaintiff from a particular injury," that the "defendant breached that duty" and that the breach "actually and proximately caused the plaintiff's injury."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

First, Plaintiffs fail to plead that any Carrier or Law Firm Defendant owed Plaintiffs a duty to protect him from cyber-attacks.  *Inversiones YV3343 v. Lynx FBO Fort Lauderdale, LLC*, No. 21-cv-60197, 2024 WL 2938805, *6 (S.D. Fla. June 11, 2024) ("[I]f no legal duty exists, then no action for negligence may lie"); *Kowkabany v. Home Depot, Inc.*, 606 So. 2d 716, 720 (Fla. 1st DCA 1992) ("[I]t is not sufficient to show that the defendant owed to another person or class of persons a duty which, had it been performed, would have prevented the injury of which complaint is made by the plaintiff." (citation omitted)).  But "a person has no duty to take precautions to protect another against criminal acts of third parties."  *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 28 (Fla. 2d DCA 2011).  Rather, to plead a duty under Florida law, Plaintiffs must plead a special relationship between Defendants and Plaintiffs from which such a duty would arise.  *Id.*

Plaintiffs allege that the Carrier and Law Firm Defendants "owed a non-delegable duty of reasonable care in the investigation, inspection, [and] oversight of" either the IOA Defendants or

27

of the Law Firm's "computer networks." (Compl. ¶ 1117). But the Complaint includes no facts establishing that any Defendant had any relationship with *Plaintiffs* from which such a duty would arise. Absent any facts establishing that relationship, the "conclusory assertion that [Defendants] owed a duty of reasonable care is, standing alone, insufficient to state a negligence claim." *Calvoz v. Chamonix, Inc.*, No. 22-cv-22358, 2023 WL 11661631, at *4 (S.D. Fla. Apr. 20, 2023). In dismissing the substantively identical claim in the Carrier RICO Action, this Court held that the Carrier Defendants did not owe a duty to Farrow's client. They certainly do not owe a duty to Farrow or Farrow's wife. Similarly, any duty owed by the Law Firm Defendants to implement technology policies is owed, at most, to the Law Firm's clients. It is not owed to the law firm's opposing counsel.

Second, Plaintiffs fails to sufficiently allege any action by the Carrier or Law Firm Defendants that would constitute a breach of that alleged duty or that such breach caused Plaintiffs' injuries. Instead, Plaintiffs rely on boilerplate accusations of negligence and breach untethered from any well-pled fact. *Donaldson v. Carnival Corp.*, 2020 WL 6801883, at *3 (S.D. Fla. Nov. 18, 2020) ("Plaintiff cannot simply state that the Defendant has been negligent and advance boilerplate allegations supporting its negligence claims where those claims are devoid of any facts."). As to the Carrier Defendants, the Complaint fails to plead any facts suggesting that the investigation into the IOA Defendants would have uncovered the cyber-attacks deployed by FTI. As to the Law Firm Defendants, the Complaint alleges that the cyber-attacks "would take less than a few minutes to discover." (Compl. ¶ 1124). But the Complaint concedes that the "Threat Actor Defendants' conduct and activities" were "nearly impossible to detect" due to their "sophistication." (*Id.* ¶¶ 210, 213).

28

Moreover, in order to sue an attorney for negligence involving the rendition of legal services, a plaintiff must prove: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff. *Maillard v. Dowdell*, 528 So. 2d 512, 514 (Fla. 3rd DCA 1988). With respect to the first element, it is "not sufficient merely to show that an attorney-client relationship existed between the parties, it is essential that the plaintiff show that the relationship existed with respect to the acts or omissions upon which the malpractice claim is based." *Lane v. Cold*, 882 So. 2d 436, 438 (Fla. 1st DCA 2004). Privity of contract is therefore a critical component of any claim against an attorney for deviating from the standard of care. *See Brennan v. Ruffner*, 640 So. 2d 143, 145 (Fla. 4th DCA 1994); *Fed. Deposit Ins. Corp. for Orion Bank of Naples, Florida v. Nason Yeager Gerson White & Lioce, P.A.*, No. 13-CV-208-FtM-38UAM, 2013 WL 12200968, at *8 (M.D. Fla. July 22, 2013). A plaintiff cannot sue in the absence of an employment relationship that creates a direct obligation and a corresponding duty.

## VII.   REVIEW OF STATE COURT INJUNCTION (COUNT VIII) IS BARRED

In Count VIII, Farrow and Farrow Law ask this Court for unspecified damages relating to a state court order. (Compl. ¶¶ 1162-67). But it is black letter law that a "federal district court may not review the final decisions of a state court of competent jurisdiction." *Corbin v. Supreme Court of Fla.*, 233 F. App'x 917, 918 (11th Cir. 2007). Under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to hear claims brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Efron v. Candelario*, 110 F.4th 1229, 1235 (11th Cir. 2024).

Farrow and Farrow Law are such "state-court losers." On April 26, 2021, a Florida state court judge entered an order in the IOA Defamation Case, which temporarily enjoined Farrow and

his law firm from his "ongoing and systematic campaign" against IOA. *Spagnuolo v. IOA*, 356 So. 3d at 912. On appeal, the appellate court affirmed the factual and legal basis for the injunction, but narrowed its scope on First Amendment grounds.  In April 2023, the trial court entered the Temporary Injunction.  (No. 2020-CA-000725, D.E. 716).  In the event the injunction was wrongfully issued, the trial court retained jurisdiction to award damages out of the bond posted by IOA.  Instead of appealing the order or otherwise challenging the order in the trial court, however, Farrow abandoned the case, including by failing to appear at trial in December 2024.  At trial, IOA established "each and every element" of a permanent injunction by "uncontroverted evidence." Farrow again did not appeal.

Now, years later, Farrow argues that the injunction was "procured in violation of the First Amendment," (Compl. ¶ 1163), that IOA had no standing (*id.* ¶ 1164), and that the injunction motion was procedurally infirm (*id.* ¶ 1165).  Even if these challenges had merit (they do not), this Court lacks jurisdiction to review the Temporary Injunction.  The time and place to raise these challenges was April 2023 in the state court proceedings.  But Farrow did not appeal the Temporary Injunction in April 2023.  Farrow does not challenge the final judgment in the case, which independently found that IOA had a legal right to a permanent injunction.  Federal courts do not sit as alternative courts of appeal for Plaintiffs who forfeited their appellate rights in state court.

## CONCLUSION

For the foregoing reasons, Moving Defendants jointly request that the Complaint be dismissed with prejudice.

Dated: June 17, 2025.

Respectfully submitted:

/s/ Peter W. Homer
Peter W. Homer
Florida Bar No. 291250
Email:  phomer@homerbonner.com
Gregory J. Trask
Florida Bar No. 0055883
Email:  gtrask@homerbonner.com
**HOMER BONNER**
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 350-5139
Facsimile:  (305) 372-2738


Bryce L. Friedman (PHV forthcoming)
Email: bfriedman@stblaw.com
Evan M. Gilbert (PHV forthcoming)
Email: evan.gilbert@stblaw.com
**SIMPSON THACHER & BARTLETT**
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
*Attorneys for Defendant Chubb*
*Custom Insurance Company*



/s/ Valerie Shea
Valerie Shea, Esquire
Florida Bar No. 436800
E-mail: vshea@goldbergsegalla.com
**GOLDBERG SEGALLA LLP**
801 Brickell Avenue, 8th Floor
Miami, Florida 33131
Mailing Address:
Post Office Box 607
Buffalo, NY 14201
Telephone No. 786-814-4813
Facsimile No. 786-814-4899
*Attorneys for Defendant Philadelphia*
*Indemnity Insurance Company*

/s/ Sky A. Emison
Sky A. Emison
Florida Bar No. 1028493
E-mail: sky.emison@troutman.com
**TROUTMAN PEPPER LOCKE, LLP**
1395 Brickell Ave., Suite 900
Miami, Florida 33131
Telephone: 312-443-1818
Facsimile: 561-655-8719
*Attorneys for Defendant Hartford*
*Casualty Insurance Company*


/s/ Nelson C. Bellido
Nelson C. Bellido
Florida Bar No. 974048
Email: nbellido@roiglawyers.com
Email: pleadings@roiglawyers.com
**ROIG LAWYERS**
201 S. Biscayne Blvd., Suite 2819
Miami, Florida 33131
Telephone: (786) 476-1661
Facsimile: (305) 405-1022
*Attorneys for Defendant Nationwide*
*Insurance Company of America*



/s/ Seth A. Kolton
Seth A. Kolton
Florida Bar No. 21045
E-Mail: seth@shendellpollock.com
Kristine T. DeSoiza
Florida Bar No. 1002230
E-Mail: kristi@shendellpollock.com
**SHENDELL & POLLOCK, P.L.**
951 Yamato Rd, Suite 280
Boca Raton, FL 33431
Tel: (561) 241-2323
Fax: (561) 241-2330
*Attorneys for Defendants, Moran Kidd*
*Lyons Johnson Garcia, P.A., and Brian*
*Moran*

/s/ Markham R. Leventhal_____
Markham R. Leventhal
Florida Bar No. 616140
Email: mleventhal@carltonfields.com
Sean W. Hughes
Florida Bar No. 1038714
Email:  shughes@carltonfields.com
**CARLTON FIELDS, P.A.**
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Telephone: (305) 347-6905
Facsimile: (305) 530-0055
*Attorneys for Defendant Berkshire Hathaway*
*Specialty Insurance Company*

/s/ Joshua S. Widlansky_____
Joshua S. Widlansky
Florida Bar No. 45197
Email: jsw@pbl-law.com
**PADULA BENNARDO LEVINE**
3837 NW Boca Raton Blvd., Suite 200
Boca Raton, FL 33431
Tel: (561) 544-8900
Fax: (561) 544-8999
*Attorneys for Defendants Joe Taylor*
*Restoration, Inc., and Joseph Clifford Taylor*

/s/ Scott D. Ponce_____
Scott D. Ponce
Florida Bar No. 0169528
Email: scott.ponce@hklaw.com
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7799
*Attorneys for Defendants McClatchy*
*Media Company, LLC and Ben Wieder*

/s/ A. Brian Albritton_____
A. Brian Albritton
Florida Bar No. 777773
Rhett Conlon Parker
Florida Bar No. 92505
**PHELPS DUNBAR, LLP**
100 S. Ashley Drive, Suite 2000
Tampa, FL 33602
Email: Brian.Albritton@phelps.com
Email: Rhett.Parker@phelps.com
Telephone: (813) 472-7500
Facsimile: (813) 472 -7550
*Attorneys for Defendant Markel*
*Insurance Company*

/s/ Jacqueline Arango_____
Jacqueline M. Arango
Florida Bar No. 664162
Email: jacqueline.arango@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Tel: (305) 374-5600
*Attorneys for Defendants Duane Morris LLP*
*and Gunster Law*

/s/ Christopher J. Fraga_____
Christopher J. Fraga
Florida Bar No. 1010228
Email: Christopher.Fraga@fmglaw.com
Robert M. Klein
Florida Bar No. 230022
Email: Robert.Klein@fmglaw.com
**FREEMAN MATHIS & GARY, LLP**
9130 S. Dadeland Blvd., Suite 2000
Miami, FL 33156
Tel: (305) 670-3700
*Attorneys for Defendant Buckner & Miles,*
*P.A.*

/s/ Laura Besvinick
Laura Besvinick
Florida Bar No. 391158
Email: laura.besvinick@clydeco.us
**CLYDE & CO US LLP**
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Telephone: (305) 446-2646
Facsimile: (305) 441-2374
*Attorneys for Defendant American Casualty*
*Company of Reading, Pennsylvania*

/s/ Timothy A. Kolaya[9]
Timothy A. Kolaya
Florida Bar No. 56140
Email: tkolaya@sknlaw.com
**STUMPHAUZER KOLAYA NADLER &**
**SLOMAN, PLLC**
2 S. Biscayne Blvd., Ste. 1600
Miami, Florida 33131
Tel.: (305) 614-1400
Fax: (305) 614-1425
*Attorneys for Defendants IOA Group, LLC,*
*Insurance Office of America, Inc.,*
*Heath Ritenour, John Ritenour and*
*Stumphauzer Kolaya Nadler & Sloman, PLLC*

---

[9] Plaintiffs have named Timothy Kolaya, individually, as a Defendant in this case, but have not served Mr. Kolaya. By appearing in this action as counsel for IOA Group, LLC; Insurance Office of America, Inc.; Heath Ritenour; John Ritenour; and Stumphauzer Kolaya Nadler & Sloman, PLLC, Mr. Kolaya is not appearing in this case on his own behalf or otherwise waiving the requirements of formal service of process under Rule 4 of the Federal Rules of Civil Procedure.